<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

---

|  |  |  |
|---|---|---|
| JANINE KELLEY, | : | |
| | : | Civ. Action No. 19-4926 (RMB) |
| Petitioner | : | |
| | : | |
| v. | : | **OPINION (REDACTED)** |
| | : | |
| UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent | : | |
| | : | |

---

BUMB, United States District Judge

This matter comes before the Court upon Petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 (Mot. to Vacate, Dkt. No. 1.), Respondent's ("the Government") answer to the motion (Answer, Dkt. No. 4)[1], and Petitioner's reply to the answer. (Reply, Dkt. No 7.) For the reasons discussed below, the Court denies Petitioner's motion.

---

[1] The Government failed to attach the exhibits to its Answer on CM/ECF. The Court relies on the paper copies of the documents originally submitted to the Honorable Jerome B. Simandle, and the sentencing transcript filed under seal in the underlying criminal action. In the accompanying Order, for completeness of the electronic record, the Court will order the Government to file the exhibits to the Answer under seal, in compliance with Local Civil Rule 5.3(c).

I.   BACKGROUND

On August 9, 2015, Petitioner, represented by Assistant Federal Public Defender ("AFPD") Christopher H. O'Malley, pleaded guilty before the Honorable Jerome B. Simandle to a one-count Information charging her with conspiring with Alexander Capasso (prosecuted separately), to use two minors in the production of child pornography between November 2011 and October 2012, in violation of 18 U.S.C. § 2251(a), (e). USA v. Kelley, Crim. No. 16-359 (JBS) (Plea Agreement, Dkt. No. 22.) Petitioner cooperated against Capasso, and upon the motion of the United States, she received a significant downward departure pursuant to U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e), from an offense level of 43 and an advisory Guidelines range of a statutory mandatory minimum prison term of 180 to 360 months, to an offense level of 33 and an advisory Guidelines range of 135 to 168 months. Id. (Sentencing Tr. at 5, 14, Dkt. No. 33.) On January 19, 2018, Petitioner was sentenced to serve a 144-month term of imprisonment, followed by ten years of supervised release. Id. Judgment was entered on January 24, 2018. Id. (Judgment, Dkt. No. 28.) Petitioner filed a pro se notice of appeal from her sentence on February 5, 2018, docketed in the Third Circuit Court of Appeals at No. 18-1246. After consulting with AFPD O'Malley about the terms of her plea agreement, Petitioner withdrew her direct appeal. USA v. Kelley, No. 181246 (3d Cir.) (Mot. to Withdraw, Feb. 21, 2018.) On February 6, 2019, she filed

the present motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255.

II. DISCUSSION

Petitioner seeks relief for violation of her Sixth Amendment right to effective assistance of counsel at sentencing. She argues that but for counsel's errors, she was likely to have received a shorter sentence.

A. The Sixth Amendment Right to Effective Assistance of Counsel

The burden of proof on a claim of ineffective assistance of counsel under 28 U.S.C. § 2255 lies with the movant. United States v. Travillion, 759 F.3d 281, 289 (3d Cir. 2014). To meet the burden, Petitioner must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668, 687 (1984). The two-part test requires a petitioner to establish (1) counsel's deficient performance and (2) prejudice. Id. The first part of the test requires a petitioner to show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Furthermore, courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.

"If it is easier to dispose of an ineffectiveness claim on the ground of a lack of sufficient prejudice, . . . that course should be followed." Strickland, 466 U.S. at 697 "Prejudice" is

established when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

   B.   Ground One: Counsel Failed to Argue for a Proportional
        Sentence under 18 U.S.C. § 3553(6)

Petitioner contends that her counsel failed to argue, under 18 U.S.C. § 3553(6), for a sentence that was proportional to her blameworthiness relative to Capasso, who received a twenty-year sentence pursuant to a Rule 11(c)(1)(C) plea. (Mot. to Vacate ¶9, Dkt. No. 1.) Petitioner claims that Capasso was far more culpable than she, because he induced her participation in the offense using tremendous psychological pressure, and he participated in similar crimes against other women and children. Petitioner submits that if her counsel had argued for a proportional sentence under § 3553(6), she would have received less than twelve years, sixty percent of Capasso's twenty-year sentence.

The Government opposes this ground for relief, arguing that (1) a significant portion of Petitioner's sentencing memorandum was devoted to proportionality, although not labeled as falling under § 3553(6); (2) defense counsel addressed the issue at the sentencing hearing; and (3) this resulted in a sentence

4

substantially lower than Capasso's 20-year sentence. (Answer at 4-5, Dkt. No. 4.)

Indeed, AFPD O'Malley argued for proportionality in Petitioner's sentencing memorandum, <u>USA v. Kelley</u>, Crim. No. 16-359(JBS) (Def's Sentencing Mem., Dkt. No. 24.) Relying on Dr. Lischick's expert report, he contended that Capasso, "through a process of coercive control and manipulation, destroyed and abused {Petitioner,]" grooming her "over time to submit his will." <u>Id.</u> at 2-3 (unnumbered). In speaking of Petitioner's family, AFPD O'Malley wrote,

> [t]hey deeply believe they and their children will be better served and healed by a sentence below the minimum statutory range. They believe a sentence otherwise would be an additional injury to them. They rightfully see Alex Capasso proportionately far more blameworthy than [Petitioner]. They greatly wish to see a sentence recognize this truth.

<u>Id.</u> at 7.

Tellingly, at the sentencing hearing, the Honorable Jerome B. Simandle stated, "[y]ou mentioned proportionality, and I think this is actually a pretty strong argument for Ms. Kelley, the proportion between her sentence and Capasso's sentence." <u>USA v. Kelley</u>, Crim. No. 16-359 (JBS) (Sent. Tr. at 41, Dkt. No. 33.) To which AFPD O'Malley replied, in part, "[a]nd I submit, Your Honor, that a sentence below the half mark captures her proportionality with Mr. Capasso…." <u>USA v. Kelley</u>, Crim. No. 16-359 (JBS) (Sent.

Tr. at 48, Dkt. No. 33.) The Court agreed there were "pretty striking differences" between the culpability and remorse of the co-defendants but explained ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████ (Id. at 95.)

The record establishes that AFPD O'Malley zealously advocated, in writing and at the hearing, that Petitioner should receive less than half the sentence of her co-defendant based on her proportionate blameworthiness. The Court found this to be "a pretty strong argument" but ultimately sentenced Petitioner to a greater sentence than suggested by the defense, sixty percent of her co-defendant's sentence, explaining

> [a] sentence needs to be sufficient to protect the community from danger. And despite all the progress that Ms. Kelley is making, for me to vary downward further would, I think, be an underestimation of the seriousness of the offense, the need to deter and the danger that a shorter sentence would present to the community.
>
> There's a need for general deterrence as well. Where an individual betrays the trust of children who are so young and takes their innocence away for the purpose of sexual gratification, they ought to know that they're going to go to prison for a long time. Worse than robbing a bank, worse than selling drugs, taking away someone's innocence, creating in the children recognition, especially in one of the child victims, that something very bad has happened, even to the point where the child wonders if the child himself or herself is responsible for it when of course they weren't. But when such a young child is

> victimized, these are the consequences that
> may be lifelong for the victims.

(Sentencing Tr. at 114-15, Dkt. No. 33.)

AFPD O'Malley was effective in persuading the Court to impose a proportionate sentence based on the facts of the case. Courts may not "engag[e] in a prophylactic exercise to guarantee each defendant a perfect trial with optimally proficient counsel, but rather to guarantee each defendant a fair trial, with constitutionally competent counsel." Marshall v. Hendricks, 307 F.3d 36, 85 (3d Cir. 2002). Petitioner has not established that her counsel's performance at sentencing fell below this standard. Therefore, the Court denies Ground One of the § 2255 motion.

C.   Ground Two: Failure to Object to Misapplication of USSG 1B1.2(d) and to the addition of five levels under USSG § 4B1.5(b)

In her second ground for relief, Petitioner argues that her counsel failed to object to misapplication of USSG § 1B1.2(d), and to the addition of five levels in offense severity under USSG § 4B1.5(b) in the PSR. (Mot. to Vacate ¶9(b), Dkt. No. 1.) In her reply to the answer, Petitioner withdraws her claim that counsel failed to object to the Probation Office's erroneous application of U.S.S.G. § 1B1.2(d), acknowledging the enhancement was in fact proper under U.S.S.G. § 2G2.1(d)(1)). (Reply at 2, Dkt. No. 7.) Further, Petitioner explains that the five offense level increase under USSG § 4B1.5(b) was applicable, but her counsel should have

argued for a variance because the broadly worded enhancement was intended for repeat sexual offenders who presented a danger to the public, which was not the situation here. (Reply at 3-6, Dkt. No. 7.) Petitioner contends that if her counsel had advanced the argument, the Court would have been bound to consider it and ultimately might have imposed a lower sentence in response to a "lower starting point" in the Guidelines range. (Id.)

USSG § 4B1.5(b) (2011)[2] provides, in relevant part:

> (b) In any case in which the defendant's instant offense of conviction is a covered sex crime, neither §4B1.1 nor subsection (a) of this guideline applies, and the defendant engaged in a pattern of activity involving prohibited sexual conduct:
>
>> (1) The offense level shall be 5 plus the offense level determined under Chapters Two and Three….

There is no dispute that § 2251 is a covered sex crime. (Reply at 3-6, Dkt. No. 7.) See U.S.S.G. § 4B1.5, comment note 2; U.S. v. Heiser, 473 F. App'x 161, 169 (3d Cir. 2012). Petitioner is not a career offender pursuant to U.S.S.G. § 4B1.1, and she did not have any prior sex offense convictions at the time of her sentencing. (PSR at 38-40, 44-45.) Petitioner pled guilty to conspiring with Alexander Capasso to use two minors ███████████████ in the production of child pornography between November 2011 and October

---

[2] Available at https://www.ussc.gov/guidelines/2015-guidelines-manual/archive/2011-index (last visited July 7, 2021).

2012, in violation of 18 U.S.C. § 2251(a), (e). <u>USA v. Kelley</u>,
Crim. No. 16-359 (JBS) (Plea Agreement at 1, Dkt. No. 22.)

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

█████████

Application Note 4(B)(1) to USSG § 4B1.5(b) provides:

> (i) [f]or purposes of subsection (b), the
> defendant engaged in a pattern of activity
> involving prohibited sexual conduct if on at
> least two separate occasions, the defendant
> engaged in prohibited sexual conduct with a
> minor.

> (ii) Occasion of Prohibited Sexual Conduct.—
> An occasion of prohibited sexual conduct may
> be considered for purposes of subsection (b)
> without regard to whether the occasion (I)
> occurred during the course of the instant
> offense; or (II) resulted in a conviction for
> the conduct that occurred on that occasion.

Petitioner's conduct, described above, clearly fell within
the definition of Application Note 4(b)(1) and called for an
increased sentence. Based on the facts of the case, if defense
counsel had argued for a variance because application of USSG §
4B1.5(b) was too harsh, he was unlikely to be successful. Moreover,

9

any such argument would have invited the Government ██████████

████████████████████████████████████████████████████████████

██████████, increasing the potential for a higher sentence than Petitioner received by counsel focusing on her acceptance of responsibility, remorse, and proportionality. Therefore, there was a strategic reason not to argue that the Court should vary downward

████████████████████████████████████████████████████████████

██████ was undeserving of a five level increase in offense level. "[C]ounsel is not ineffective for failing to raise meritless claims." U.S. v. Berry, 314 F. App'x 486, 487 (3d Cir. 2008) (citing Parrish v. Fulcomer, 150 F.3d 326, 328 (3d Cir. 1998). Therefore, the Court denies Ground Two of the § 2255 motion.

D.   Ground Three: Counsel Failed to Effectively Use Dr. Lischick's Expert Report

Although her counsel obtained a comprehensive expert report by Dr. Cynthia M. Lischick, Petitioner contends AFPD O'Malley failed to use the report effectively to argue for a lighter sentence. (Mot. to Vacate ¶9(c)(1), Dkt. No. 1.)

1.   Counsel Failed to Advance a Coherent Theory

Petitioner contends that her counsel failed to advance a coherent theory, in writing or at allocution, of why the information in the expert report by Cynthia M. Lischick warranted a substantially mitigated sentence. (Mot. to Vacate ¶9(c), Dkt. No. 1.)

In response, the Government asserts the record shows defense counsel relied on and explained Dr. Lischick's report in the sentencing memorandum and at the sentencing hearing. (Answer at 8-9, Dkt. No. 4.) Further, counsel coherently argued "that Capasso abused Kelley – he broke down her will and she acted at his mercy; "but for" Capasso, Kelley would never have committed this offense…." (Id. at 9.)

In reply, Petitioner points to comments by the Court indicating that the Court did not "fully accept Dr. Lischick's analysis." (Reply at 6-7, Dkt. No. 7.) Petitioner blames counsel for his apparent inability "to articulate his expert's reasoning and conclusions without her presence in the courtroom." (Id. at 7.)

The record does not support Petitioner's conclusion that counsel's deficient presentation of the expert report resulted in the Court's failure to accept Dr. Lischick's conclusions in full. In Petitioner's sentencing memorandum, under the heading "Coercive Control," AFPD O'Malley summarized the detailed facts supporting Dr. Lischick's conclusions. USA v. Kelley, Crim. No. 16-359 (JBS) (Def's Sentencing Mem. at 5-7, Dkt. No. 24.) He succinctly explained "Alex Capasso saw her as a mark he could turn through a campaign of coercive control by humiliation, degradation, and dominance over her." (Id. at 6.) He further noted that Petitioner had not suffered from PTSD with dissociative symptoms or aspects

11

of Battered Woman's Syndrome and Stockholm Syndrome before she met Capasso, and these conditions were "highly likely a direct result of Capasso's battering in the context of coercive control." (Def's sentencing Mem. at 5, Dkt. No. 24.) He further argued that Petitioner submitted to Capasso's demands for child molestation and pornography "in order to avoid further abuse," which had included sodomy, rape, and beatings. (Id.) He reiterated Dr. Lischick's conclusion that Petitioner's "decisions-making processes were no longer her own and she functioned like a ghost walking, a programmed robot, going through the motions of carrying out Capasso's demands without free will…." (Id. at 6.) Petitioner's sentencing memorandum does not support Petitioner's argument that her counsel failed to advance a coherent explanation of Dr. Lischick's report.

2.   Counsel Failed to Present the Expert in Court and Failed to Respond Adequately to the Court's Questions About the Expert Report

Petitioner further argues that AFPD O'Malley did not effectively present Dr. Lischick's report because he failed to have her testify at the sentencing hearing and did not have her CV available. (Mot. to Vacate, ¶9(c)(2), Dkt. No. 1.) Petitioner also points to O'Malley's agreement with the Court's comment that one of Dr. Lischick's conclusions was "an overstatement." (Id.) She faults her counsel for not requesting a continuance to present Dr. Lischick's testimony, after it became clear that the Court had

unanswered questions about the expert's report. (Mot. to Vacate ¶9(c)(ii), Dkt. No. 1.)

The Government maintains that the decision of whether to call an expert witness is an issue best left to the professional strategic judgment of the attorney familiar with the case. (Answer at 9, Dkt. No. 4.) Cross-examination of psychological experts can be very detrimental to a defendant's argument and end up highlighting the weaknesses of a case. (Id.) Finally, the Government contends that Petitioner has not shown any prejudice in failing to call Dr. Lischick as a witness because her testimony would not have affected the seriousness of the offense and the harm to the victims, which formed the basis for the Court's decision not to impose a lighter sentence.

In reply, Petitioner asserts "the ability to hear and question the expert in person is reasonably likely to have overcome the Court's tendency to minimize Capasso's 'coercive control'" over Petitioner. (Reply at 6, Dkt. No. 7.) Petitioner admits that her counsel argued for a mitigated sentence with modest success, but "he did not embrace and articulate the full mitigating power of Dr. Lischick's conclusions." (Id. at 7.)

The sentencing transcript, reviewed in its entirety, does not support Petitioner's conclusion that the Court would have imposed a lighter sentence but for her counsel's failure to present Dr. Lischick's testimony. The Court did not struggle with

13

understanding the theory and conclusions presented in the report, but rather disagreed, based on the facts, with the conclusion that Petitioner had no control at all over her conduct. Petitioner argues, despite Dr. Lischick's statement in her report that "expert testimony on battering and its effects involves a relatively new area of psychological assessment"[3] that her counsel was ineffective because he failed to convince the Court that she had no control over her actions. "The proper measure of attorney performance" is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. Petitioner has not cited to any professional standard that requires counsel to convince a sentencing court to fully credit an expert's testimony, particularly in a relatively new psychological area.

Here, the Court pointed to conduct by Petitioner that suggested she maintained some level of free will, stating

> [m]any of the things she did, she did when Capasso was not present. Maybe he was present in her brain, and certainly I think there's something to that from Dr. Lischick's report, but he certainly was not physically present. … she was even in psychotherapy at the time that this was going on and didn't see fit to mention it to any therapist[.]

(Sentencing Tr. at , Dkt. No. 33.) Based on these facts, and that Petitioner exercised free will by refusing some of Capasso's greater demands concerning the production of child pornography

---

[3]  USA v. Kelley, Crim. No. 16-359(JBS) (Expert Report at 1.)

(PSR ¶¶ 68. 99, 100), it was not unreasonable for defense counsel to agree that the expert's conclusion that Petitioner lacked free will was an "overstatement." And yet, the Court clearly was persuaded that Capasso exercised a great deal of control over Petitioner, stating that "Mr. Capasso, I think, was a mastermind of preying upon her and her weaknesses." Ultimately, however, the Court stated,

> [a] sentence needs to be sufficient to protect the community from danger. And despite all the progress that Ms. Kelley is making, for me to vary downward further would, I think, be an underestimation of the seriousness of the offense, the need to deter and the danger that a shorter sentence would present to the community.

At the sentencing hearing, Petitioner acknowledged her responsibility and remorse for her actions, resulting in mitigation of her sentence. (Sentencing Tr. at 66-80, Dkt. No. 33.) Her position now that her counsel was constitutionally inadequate for failing to convince the Court that she had no control over her actions is contrary to her acceptance of responsibility. In any event, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment" id. at 690, and Petitioner has not demonstrated otherwise. Therefore, the Court denies the third and final ground for relief in Petitioner's motion to vacate. Because the record in this case

conclusively shows that Petitioner has failed to establish that her counsel's performance was constitutionally defective and resulted in prejudice to her at sentencing, no evidentiary hearing is required. See United States v. Padilla-Castro, 426 F. App'x 60, 63 (3d Cir. 2011) ("A hearing is unnecessary when 'files and records of the case conclusively show that the prisoner is entitled to no relief.' 28 U.S.C. § 2255(b).")

III. CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(B), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockerell, 537 U.S. 322, 327 (2003).

Jurists of reason could not disagree with this Court's resolution of Petitioner's challenge to her sentence. Therefore, the Court denies a certificate of appealability.

IV.   CONCLUSION

For the reasons discussed above, the record as a whole falls far short of supporting a finding of prejudice from any of the alleged deficiencies of Petitioner's counsel. Therefore, Petitioner's motion to vacate, set aside or correct sentence under 28 U.S.C. § 2255 is denied, and a certificate of appealability shall not issue.

An appropriate Order follows.

Dated: **July 20, 2021**

s/Renée Marie Bumb
**RENÉE MARIE BUMB**
**United States District**